# EXHIBIT A

13:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


MIXING & MASS TRANSFER        )
TECHNOLOGIES, LLC,            )
                             )
            Plaintiff,        )
                             ) C.A. No. 19-529-MN
v.                            )
                             )
SPX CORPORATION, et al.       )
                             )
            Defendant.        )


                   Friday, January 17, 2020
                   10:00 a.m.
                   Oral Argument


                   844 King Street
                   Wilmington, Delaware


BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge



APPEARANCES:


            STEVENS & LEE
            BY:  STACEY A. SCRIVANI, ESQ.
            BY:  JEFFREY D. BUKOWSKI, ESQ.

            -and-

            KENT FRANCHISE LAW
            BY:  JOHN W. GOLDSCHMIDT, ESQ.

                   Counsel for the Plaintiff

```
 1        APPEARANCES CONTINUED:

 2

 3

 4

 5                SHAW KELLER LLP
                  BY:  JOHN W. SHAW, ESQ.

 6                -and-

 7                BAKERHOSTELTER
                  BY:  KENNETH SHEEHAN, ESQ.
 8                BY:  WILLILAM T. DeVINNEY, ESQ.

 9                        Counsel for the Defendants

10

11                 _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

12

13                THE COURT:   Good morning.  Please be seated.

14     Okay.  Let's start with some introductions.

15                MS. SCRIVANI:  Good morning, Your Honor.  On

16     behalf of the plaintiffs, Mixing and Mass Transfer

17     Technologies, Stacey Scrivani from the law firm of Stevens &

18     Lee.  And I have with me my colleague, Jeffrey Bukowski who

19     will be arguing today and John Goldschmidt from the Kent

20     Franchise law firm.

21                THE COURT:  Welcome to you.

22                MR. SHAW:  Good morning, Your Honor.  John Shaw

23     for defendant SPX.  Joining me from BakerHostelter is Ken

24     Sheehan, Bill DeVinney and from SPX, Kevin Clement.

25                THE COURT:   Good morning to all of you as well.
```

10:00:04 1          I have reviewed all of the papers.  But I wanted

10:00:10 2    to get you in here to see if there was anything else that

10:00:15 3    you wanted me to focus on or to give you a chance to argue

10:00:20 4    your case.

10:00:22 5          MR. SHEEHAN:  Thank you, Your Honor.  Should I

10:00:26 6    proceed?

10:00:26 7          THE COURT:  Yes, please.

10:00:27 8          MR. SHEEHAN:  We do have the PowerPoint

10:00:30 9    presentation and a copy was provided.

10:00:35 10          THE COURT:  Thank you.

10:00:35 11          MR. SHEEHAN:  So Your Honor, this is a motion to

10:00:42 12    dismiss.  The motion to dismiss is basically a Rule 12(b)(6)

10:00:47 13    based --

10:00:48 14          THE COURT:  Yes, I have read all the papers.

10:00:50 15    You don't have to give me that background, I got it.  I read

10:00:53 16    the complaint and the different counts and the release.

10:00:56 17          MR. SHEEHAN:  This is the language of the -- the

10:00:59 18    operative portion of the agreement which contains the

10:01:02 19    general waiver of release language.  I did excerpt that in

10:01:07 20    the PowerPoint presentation, but the place to start is the

10:01:12 21    law, we pointed in our brief and the cases, and I believe

10:01:17 22    all of the cases irrespective of which side cited the cases,

10:01:21 23    if you read the cases they all stand for the proposition

10:01:24 24    that under Pennsylvania law, which is the operative law

10:01:29 25    governing this agreement, the effect of the release is

10:01:33 1  determined by the plain language of the agreement.  As the

10:01:37 2  Supreme Court of Pennsylvania pointed out, the intent of the

10:01:41 3  parties is not relevant to that, otherwise it would be

10:01:45 4  rewritten, it can be set aside one of the parties had

10:01:49 5  changed their mind.  So we do have to focus on the plain

10:01:53 6  language of the agreement and what I have excerpted out in

10:01:56 7  this slide is the operative language relevant to this

10:02:00 8  particular case.

10:02:00 9          As we see, MMT and McWhirter hereby forever

10:02:07 10  knowingly, voluntarily and reputably release, remise,

10:02:12 11  discharge and acquit SPX together with any subsidiaries

10:02:15 12  successor in interest from without any limitation any and

10:02:18 13  all claims whether accrued or unaccrued, known or unknown,

10:02:22 14  suspected or unsuspected.  And then importantly,

10:02:25 15  specifically--

10:02:26 16          THE COURT:  But what you left out was that

10:02:30 17  plaintiff, the parties, MMT, has or could have asserted or

10:02:39 18  could assert as of the effective date of this agreement.

10:02:42 19  And the patent claims, I understand your position, the

10:02:45 20  patent you're accused of infringing and the patent they want

10:02:48 21  declaratory judgment on, those patents were known, and the

10:02:52 22  product that's being accused of infringement was known, so I

10:02:55 23  understand how you would fit within that plain language.

10:02:58 24  But if you're telling me that this is a case on the plain

10:03:01 25  language, you need to explain to me how the other counts

10:03:05 1  fall within there.

10:03:07 2          MR. SHEEHAN:  Yes.  And the other counts fall

10:03:09 3  within the language at the end of this slide, the bottom, I

10:03:13 4  would say probably the clearest would be the section D, the

10:03:16 5  very end, it says any claims concerning the SPX party's

10:03:21 6  future activities with respect to technology of which the

10:03:24 7  MMT parties knew.  The A245 impeller was clearly technology

10:03:30 8  that the MMT parties knew about at the time of the agreement

10:03:34 9  because it's identified specifically in the agreement.  And

10:03:37 10 that's --

10:03:38 11         THE COURT:  But isn't it their position, again,

10:03:41 12 you know, the contract is ambiguous or if there is a

10:03:47 13 reasonable interpretation that plaintiffs can give, then I

10:03:50 14 can't on the motion to dismiss decide it.  And my question

10:03:53 15 is, is D standalone or is it still part of the, that could

10:03:59 16 have -- was asserted, could have asserted or could assert as

10:04:04 17 of the effective date?

10:04:07 18         MR. SHEEHAN:  This is similar to the argument

10:04:09 19 that was made in the *Augustine* case that we cite that was

10:04:12 20 the Federal Circuit, they made the identical argument that

10:04:12 21 there was language --

10:04:20 22         THE COURT:  The language was different in that

10:04:21 23 case, and they could have asserted as of the effective date.

10:04:22 24         MR. SHEEHAN:  In the *Augustine* case there is a

10:04:22 25 section that does point out that the argument was made that

10:04:31 1  there is language that could have been made as of the

10:04:35 2  effective date of the agreement.  There is language to that

10:04:39 3  effect in that case.  And what the Federal Circuit found is

10:04:44 4  notwithstanding that language, you have to look at what the

10:04:47 5  clear language of the agreement provides and if the clear

10:04:49 6  language of the agreement provided a release of future

10:04:52 7  claims, there is a release of future claims.  And here that

10:04:55 8  provision does stand alone.  Clearly if you read that

10:04:59 9  provision it says any claims concerning the SPX party's

10:05:04 10 future activities.  So it's not future claims, it's not

10:05:08 11 claims that they may make in the future based upon past

10:05:11 12 activities that occurred prior to the settlement agreement,

10:05:13 13 that provision is very clear, it says claims concerning the

10:05:17 14 SPX's party's future activities.  Future activities can only

10:05:22 15 occur after the settlement agreement is signed.  So there is

10:05:24 16 a release of claims relating to activities that occurred

10:05:28 17 after the agreement had been signed.

10:05:31 18         THE COURT:  But it's only those that they knew

10:05:33 19 or could have known from provided information or publicly

10:05:36 20 available information; right?

10:05:38 21         MR. SHEEHAN:  No, that provision --

10:05:40 22         THE COURT:  I'm just reading what you have here

10:05:42 23 on the chart in front of me.  Isn't that D?  The MMT parties

10:05:47 24 knew, you have D...  It says knew or could have known from

10:05:52 25 provided information or publicly available information.

10:05:55  1          MR. SHEEHAN:  Yes, and they knew the A245

10:05:58  2     patent, the 8 --

10:05:59  3          THE COURT:  I already told you, I get it.  I

10:06:01  4     understand the patent.  You don't have to argue the patent

10:06:04  5     issue.  They have to explain the patent issue to me.  You

10:06:07  6     need to explain to me the Lanham Act issue where they say,

10:06:12  7     you know, you are out there making statements that

10:06:16  8     apparently, though, they don't give me any date, apparently

10:06:19  9     after this fact, that were untrue.  And so false advertising

10:06:25 10     about your product, false statements about their product.

10:06:28 11     So what is it that -- how is it that that falls clearly

10:06:34 12     within the language that -- I'm not saying that they're

10:06:37 13     going to win, but how does it fall clearly within that you

10:06:41 14     get a win on a motion to dismiss?

10:06:44 15          MR. SHEEHAN:  Let me jump ahead to Count 2.

10:06:47 16     There are two parts of the Lanham Act claims.  I don't think

10:06:50 17     you're really focusing on the first part because that

10:06:53 18     relates to past activities, but just for completeness let me

10:06:57 19     address it and that relates to statements made to the Patent

10:07:00 20     Office regarding the '711, '844, that patent existed.

10:07:02 21          THE COURT:  I know the statements had been made.

10:07:04 22     I got it, that's parts of Count 5.

10:07:06 23          MR. SHEEHAN:  So the second part, though, is the

10:07:10 24     statements that relate -- it's purely that language patented

10:07:14 25     technology that shows up on our website on the page relating

10:07:17 1   to the A245.

10:07:19 2               THE COURT:  But the patent technology, I think

10:07:21 3   it also says something like --

10:07:36 4               MR. SHEEHAN:  I believe that is the sum and

10:07:37 5   substance of it.

10:07:39 6               THE COURT:  That is the basis, but it says, I am

10:07:41 7   looking at in Count 2, paragraph 75, defendants have

10:07:45 8   asserted among other things that defendants rather than M2T

10:07:49 9   are authorized to make, use, market and sell patented

10:07:54 10  surface aeration impeller that otherwise infringes the

10:07:59 11  patent.

10:07:59 12              MR. SHEEHAN:  And what the plaintiffs --

10:08:00 13              THE COURT:  I wasn't sure if that's suggesting

10:08:02 14  that you're saying something about their product.

10:08:04 15              MR. SHEEHAN:  No.  What they are suggesting in

10:08:07 16  their complaint is that because we say patented technology,

10:08:11 17  the public will jump to the conclusion that because our

10:08:15 18  product looks like what's in their patent that that must be

10:08:18 19  the patent that it relates to and, therefore, we must be

10:08:21 20  using their technology.  It must be theirs.  So there is a

10:08:25 21  lot of assumptions that they make.  But it's purely the

10:08:28 22  language "patented technology" is what they're focusing on

10:08:31 23  and the fact that it says patented technology.

10:08:34 24              So I think those claims should be dismissed for

10:08:37 25  several reasons.  One, I do believe they fall within the

10:08:41 1    clear language of the agreement, particularly that Section

10:08:43 2    D, which is future activities relating to the A245 product,

10:08:48 3    that is the technology which is the A245 technology.  Also

10:08:54 4    --

10:08:54 5              THE COURT:  Was the A245 referred to as patented

10:08:57 6    technology back at the time the agreement was filed, or

10:09:01 7    signed?

10:09:02 8              MR. SHEEHAN:  Your Honor, I don't know.  I don't

10:09:04 9    know whether the -- there was a split in the company, they

10:09:10 10    divided out into two different companies.  I don't know what

10:09:12 11    was on the web page back at that time.  It may have been, it

10:09:16 12    may not have been.  I don't know.  But the statement now,

10:09:20 13    one thing I will also point out there is nothing false about

10:09:23 14    that statement.  Taking the complaint on its face and of

10:09:31 15    course assuming that everything in there is correct, they're

10:09:34 16    asserting that the A245 product is infringing on their

10:09:38 17    patent.  It's covered by their patent.  So this is patented

10:09:41 18    technology.  It's patented technology that we have an

10:09:44 19    authorization to use.  We have a release, a waiver and

10:09:48 20    release of past, present and future claims regarding that

10:09:52 21    infringement by that product of their patents.  So we have

10:09:55 22    an authorization to use that patent.  It is patented

10:10:02 23    technology.  Their patent.  So there is nothing false about

10:10:06 24    the statement patented technology.  But beyond that, as I

10:10:09 25    said --

10:10:09  1              THE COURT:  Well, presumably you dispute the

10:10:12  2    fact that their patent covers it or don't you?

10:10:16  3              MR. SHEEHAN:  At this point we're asserting we

10:10:20  4    have a release with respect to that patent and that

10:10:22  5    technology.  And at that point, you know, we look at the

10:10:26  6    complaint, taking the statements in the complaint as true

10:10:31  7    for purposes of this motion, they're asserting that the

10:10:36  8    patent covers their -- that patent covers the A245 product.

10:10:41  9              THE COURT:  Okay.

10:10:42 10              MR. SHEEHAN:  But again, I would point to that

10:10:45 11    Section D, irrespective of the language.  And again, looking

10:10:47 12    at the *Augustine* case, Federal Circuit does address that

10:10:51 13    identical argument that the --

10:10:53 14              THE COURT:  But the Federal Circuit was looking

10:10:55 15    at it in connection with patent claims, then patent issues,

10:10:59 16    infringement issues that had already been made, and whether

10:11:03 17    new acts of infringement were different; right?  They

10:11:07 18    weren't talking about a Lanham Act claim where potentially

10:11:13 19    things change in what you were saying from the time of the

10:11:16 20    agreement to now.

10:11:19 21              MR. SHEEHAN:  That is one of the -- the primary

10:11:22 22    argument or the primary issue that was being addressed in

10:11:26 23    that case, yes.

10:11:27 24              THE COURT:  Okay.

10:11:30 25              MR. SHEEHAN:  I don't want to say there wasn't a

10:11:32 1   Lanham Act because I think there may have been, but not -- I

10:11:36 2   don't think it's relevant to that issue.  But again, the

10:11:42 3   court in that case did look at that language, specifically

10:11:46 4   that language, you know, that there is -- you know, that the

10:11:51 5   release was specific to claims that existed prior to the

10:11:57 6   settlement agreement, and the Federal Circuit found that

10:12:00 7   doesn't trump the clear language of the agreement and when

10:12:03 8   you're having clear release of future claims.

10:12:06 9        And again, there is two statements that we're

10:12:10 10  focusing on here.  One is any current or future claims

10:12:18 11  concerning the A245 impellers, but even clearer than that

10:12:22 12  one is Section D which is any claims concerning the SPX

10:12:27 13  party's future activities.  So clearly the future activities

10:12:30 14  relating to technology that they knew about.  And they knew

10:12:33 15  about the A245 impeller.

10:12:39 16       THE COURT:  But it can't possibly be that you're

10:12:42 17  saying that language, they knew about the A245 impeller so

10:12:45 18  you could say whatever you wanted, you could come in and

10:12:49 19  just make up the biggest fat lie and tell customers and

10:12:52 20  compete with them, but because they released the A245

10:12:57 21  impeller.  I mean, there are limits to that; right?

10:13:00 22       MR. SHEEHAN:  I won't speculate as to what the

10:13:02 23  limits would be.  Certainly we can't commit antitrust

10:13:02 24  violations because there are cases that specifically say you

10:13:02 25  can't release future claims with respect to antitrust

violations.   This is not an antitrust violation.   There have

been no cases cited nor am I aware of any that say you can't

release future claims of unfair competition and Lanham

claims.   So this particular party has released any claims

regarding that technology.

THE COURT:   Again, though, I still think that

the problem I'm having is you need it to be so clear in the

agreement, and yet the portion of the agreement that you're

showing me has all kinds of ellipses in it that take out the

parts and portions that they're going to rely on including

the parts of things that could have been brought at the time

and that they knew or could have known language at the end

of part D.   So to me, I'm not sure I'm following how the

language is that clear that you can prevail on a motion to

dismiss.   I'm not saying you can't prevail and you won't

likely prevail later down the road, but, you know, motion to

dismiss is a pretty early stage.

MR. SHEEHAN:   I understand.   And I would assert,

though, that the opposite is true, that we have a very broad

release.   We look at the cases that talk about this, such as

the *Augustine* case and some of the other cases, we have

broad release language, and when you have broad release

language and the broad release language is language that,

you know, whether accrued, unaccrued, known or unknown,

suspected or unsuspected, and the court has found -- if we

10:14:55  1    look at the second bullet point here under Pennsylvania law,

10:14:58  2    the language known and unknown claims amounts to the same

10:15:01  3    thing as ever had, now have or which they hereafter can,

10:15:06  4    shall or may have.  This is right out of the *Three Rivers*

10:15:10  5    case, the Third Circuit case.  We have got broad release

10:15:14  6    language here.  And when we have got broad release language

10:15:17  7    the cases say that it's --

10:15:19  8              THE COURT:  Yes, but the language that comes

10:15:20  9    after the known or unknown, unsuspected or suspected, still

10:15:28 10    it says that the MMT parties have asserted, could have

10:15:34 11    asserted or could assert as of the effective date.  It

10:15:38 12    doesn't stop with known or unknown claims.  It says those

10:15:42 13    claims that could have been asserted as of the effective

10:15:45 14    date.

10:15:47 15              MR. SHEEHAN:  Yes.  And what I would say is the

10:15:49 16    provision at the end in Section D says any claims concerning

10:15:53 17    SPX party's future activities.  And is there an

10:15:57 18    inconsistency there?  Well, the clear language of Section D

10:16:00 19    says it's releasing claims relating to future activities.

10:16:02 20              THE COURT:  I mean, I can think of ways that

10:16:05 21    that applies, right, if you continue to do things in the

10:16:08 22    future that have been released, you know, that could include

10:16:12 23    future activities.  I'm just saying I don't know that the

10:16:16 24    language is as clear as you are saying it is.

10:16:22 25              MR. SHEEHAN:  Again, Your Honor, I don't want to

10:16:27 1    repeat the same --

10:16:28 2              THE COURT:  Right, I know.  But part of the

10:16:30 3    problem I'm having is every time you cite me a case or you

10:16:33 4    cite something, you're leaving out portions of it.  And you

10:16:36 5    need to address the portions that I am concerned about

10:16:40 6    because I am trying to understand if the agreement really is

10:16:44 7    that clear.

10:16:47 8              MR. SHEEHAN:  And again, what I would point back

10:16:49 9    to is the *Augustine* case.  The *Augustine* case again

10:16:54 10   addresses this specific issue of language just like that on

10:16:59 11   language that talks about or could assert as of the

10:17:02 12   effective date and the Federal Circuit in that case said

10:17:05 13   well, yeah, we see it says that, but you know, if you look

10:17:08 14   at the language of the agreement and in the language of the

10:17:11 15   agreement it's clear that we're releasing -- that there is a

10:17:14 16   release of future claims here.  And we believe that the --

10:17:17 17   you know, the releases of future claims, again, the

10:17:20 18   provision that says they're releasing future claims relating

10:17:23 19   to the A245 impellers.  That's very clear.  They're

10:17:27 20   releasing claims relating to the A245 impellers.  They're

10:17:31 21   releasing claims relating to future activities.  I believe

10:17:34 22   that language, our position is that that language is clear.

10:17:37 23   This is a release.  This was intended to be a very broad

10:17:40 24   release that the case law says you're allowed to do that.

10:17:44 25   You're allowed to release things beyond what was in the

prior case as long as your intent was clear that you are
releasing everything.

          And I would say also that the law is also clear
that if you are intending to carve something out, when you
got broad release language, this is that broad release
language of known, you know, known, accrued, unaccrued, when
you got broad release language like that, it's the
obligation of the party who is trying to carve something out
of that to make it manifest, that intent to carve something
out.

          THE COURT:  Let me ask you a question, *Augustine*
that you're relying so heavily on, was that in the motion to
dismiss or was that a summary judgment?

          MR. SHEEHAN:  That was a summary judgment, but
it also said it was an issue of first impression.  This
issue of whether you can release first patent claims was an
issue of first impression, it expressly says this is an
issue of first impression, I think that was probably why it
was summary judgment as opposed to motion to dismiss.

          THE COURT:  But still that's the case you're
relying on most heavily and it didn't support me granting a
motion to dismiss, it was dealt with on summary judgment.

          MR. SHEEHAN:  No, I believe the other cases we
cite do support motion to dismiss based on a settlement
agreement.  You can move under 12(b)(6) when you have got a

10:18:56 1    settlement agreement that covers the claims at issue, and

10:18:59 2    here we have a settlement agreement that covers the claims

10:19:01 3    at issue.

10:19:02 4                    THE COURT:  Okay.

10:19:04 5                    MR. SHEEHAN:  Thank you, Your Honor.

10:19:05 6                    THE COURT:  Thank you.

10:19:17 7                    MR. BUKOWSKI:  May it please the Court, Your

10:19:21 8    Honor.  My name is Jeff Bukowski on behalf of the plaintiff.

10:19:25 9                    THE COURT:  How is it that you can read these

10:19:27 10   patent claims given that release?

10:19:29 11                   MR. BUKOWSKI:  Your Honor, the Court correctly

10:19:33 12   pointed out the missing language in the slide that is in the

10:19:39 13   release provision.

10:19:41 14                   THE COURT:  But the patent was known, the

10:19:43 15   product was known, and now you say, oh, now we want to

10:19:46 16   assert infringement of that patent that was known at the

10:19:52 17   time it existed, and that the product -- against a product

10:19:56 18   that was known at the time, how does that not fall within

10:19:59 19   the clear language of a claim that could have been asserted?

10:20:04 20                   MR. BUKOWSKI:  There is no evidence that the

10:20:05 21   product, the accused infringing product was known at the

10:20:08 22   time.  We know there was an A245.

10:20:10 23                   THE COURT:  You know the product was known, it

10:20:12 24   is mentioned.  It's not like you said hey, we don't know

10:20:16 25   they were coming out with an A245 impeller.  It's specified

10:20:20 1   in the product.  And it says as described in an attachment

10:20:24 2   A.

10:20:24 3         MR. BUKOWSKI:  There is nothing in attachment A

10:20:24 4   on the A245, it's not mentioned, it's not described, and

10:20:24 5   that's a fatal flaw that it is not described.  I do not know

10:20:38 6   and I do not want to represent to the Court that the A245

10:20:41 7   then was different than the A245 now.  I don't know that.

10:20:46 8   But I know that it's not described in attachment A of the

10:20:53 9   settlement agreement, and therefore, defendants cannot rely

10:20:56 10  on that provision because subsection C fails if it's not

10:21:02 11  described.

10:21:04 12        THE COURT:  Yes, I don't know that I agree with

10:21:06 13  that.  It says you're releasing all claims about the A245

10:21:10 14  patent, and -- I'm sorry, the A245 impeller, and now you're

10:21:16 15  asserting infringement for a patent that existed as of the

10:21:19 16  time.  I'm just not sure I understand what your argument is

10:21:23 17  as to how that doesn't fall within the plain language.

10:21:27 18        MR. BUKOWSKI:  And the answer to that is, Your

10:21:28 19  Honor, the key language is as of the effective date of this

10:21:31 20  agreement.  So even assuming for purposes of this argument

10:21:36 21  that the A245 was being sold in its identical configuration

10:21:42 22  to today, only patent infringement claims for those sales

10:21:51 23  would be released, and any --

10:21:52 24        THE COURT:  Well, that's the *Augustine* case.

10:21:55 25  You're not going to win that one.  That one the Federal

10:21:58  1    Circuit has dealt with.

10:21:59  2         MR. BUKOWSKI:  Well, *Augustine* is

10:22:00  3    distinguishable.  And it only came up in defendant's reply

10:22:08  4    brief, so I want to take this opportunity to raise --

10:22:11  5    identify two cases that do distinguish *Augustine* which are

10:22:24  6    *Diversified Dynamics Corp. v. Wagner Spray Tech Corp.,* which

10:22:29  7    is 106 Federal Appendix 29, a Federal Circuit 2004 case.

10:22:41  8    And *Cook, Inc. v. Endologics, Inc.*, which is 2012 Westlaw

10:22:48  9    2682749, which is a Southern District of Indiana case,

10:22:57 10    July 6th, 2012.  And both those cases distinguish *Augustine*,

10:23:03 11    and significantly the *Diversified* --

10:23:06 12         THE COURT:  On what basis?  Tell me what basis

10:23:09 13    they distinguish it on.

10:23:12 14         MR. BUKOWSKI:  The language of the release is

10:23:14 15    different and more broad in *Augustine* than it was, and the

10:23:18 16    cases -- in those cases the release language is much closer

10:23:24 17    to the language in the current case, the release language in

10:23:30 18    our case.  And the significant fact that the court relied on

10:23:36 19    in *Augustine* was the fact that the prior lawsuit involved

10:23:40 20    the very patent infringing product that was involved in the

10:23:42 21    second lawsuit, and the releasing party in that lawsuit was

10:23:51 22    aware of that infringing technology and, therefore -- and

10:24:03 23    that was a significant factor in *Augustine*, and the court

10:24:07 24    makes that very well-known.

10:24:07 25         Secondly, none of the cases cited by defendants

10:24:14  1    included in the settlement agreement a no cross-licensing

10:24:19  2    provision.  And SPX's interpretation of this settlement

10:24:25  3    agreement writes that right out of the settlement agreement.

10:24:28  4    It has no meaning if their interpretation of the release

10:24:32  5    precludes claims, patent infringement claims that infringe

10:24:37  6    on the '959 patent that accrued after the effective date of

10:24:42  7    the settlement.

10:24:46  8            THE COURT:  All right.  Tell me about the '844

10:24:49  9    patent, why you think you can raise claims about that and

10:24:54 10    things that happened in the prosecution of that patent back

10:24:57 11    in 2000, whatever, well before the settlement agreement was

10:25:01 12    signed.

10:25:02 13            MR. BUKOWSKI:  We concede that that claim should

10:25:05 14    not move forward unless, and all I will say unless

10:25:11 15    defendants attempt to use the '844 patent in the defense of

10:25:17 16    the claim, and then we would have the right under the

10:25:20 17    settlement agreement to raise the invalidity of that patent.

10:25:28 18            THE COURT:  And then why then if that claim you

10:25:31 19    concede shouldn't go forward, why should your false, your

10:25:37 20    Lanham Act claims or unfair competition claims that are

10:25:40 21    based on them saying that their technology is patented,

10:25:42 22    which you're now allowing that they have a patent that

10:25:46 23    you're not challenging, why do those claims get to go

10:25:50 24    forward?

10:25:51 25            MR. BUKOWSKI:  They're claiming that it's our

10:25:53  1   patent and it's misleading that the A245 is patented.   If

10:26:00  2   it's patented, they're referring to our patent, the '959

10:26:04  3   patent.   At least that's what we believe a reasonable

10:26:07  4   interpretation of that language is.   And it has come to

10:26:13  5   light since the filing of the complaint that there are other

10:26:16  6   statements regarding the A245 that are not in evidence or

10:26:20  7   before the Court that we will be able to show about their

10:26:25  8   SPX's rights, alleged rights to sell that A245 patent and

10:26:32  9   how they obtained those rights.

10:26:34 10           Significantly -- and the Court put its finger on

10:26:41 11   the issue, on Section 4.1(d) by its very language raises

10:26:51 12   fact questions as to what the M2T parties knew or could have

10:26:56 13   known from provided information or publicly available

10:26:58 14   information, but more importantly and I think the Court

10:27:01 15   pointed that out, all of sections 4.1(a), (b), (c) and (d)

10:27:07 16   relate back to that key language which is asserted, could

10:27:13 17   have asserted or could assert as of the effective date of

10:27:17 18   this agreement which is omitted from the PowerPoint

10:27:21 19   presentation.   And that's the key language.

10:27:22 20           The sentence goes on to say, this includes by

10:27:28 21   reference, so it's clearly a reference back in all of

10:27:33 22   4.1(a), (b), (c), and (d) to this meaning claims that could

10:27:39 23   have been asserted as of the effective date of the

10:27:42 24   agreement.

10:27:45 25           THE COURT:   And your position is that that's

10:27:47 1    clear, but at the very least it raises an issue that can't

10:27:51 2    be determined on a motion to dismiss.  Right?

10:27:53 3              MR. BUKOWSKI:  Correct.  And I would point out,

10:27:55 4    and the Court pointed out that *Augustine* itself was a

10:28:01 5    summary judgment case, not a case on a motion to dismiss.

10:28:07 6    The *Diversified Dynamics* case, and I have a copy to hand up

10:28:12 7    if Your Honor would want one.

10:28:15 8              THE COURT:  Sure.

10:28:15 9              MR. BUKOWSKI:  And of the *Cook* case and I'll

10:28:17 10   provide it to counsel.  *Diversified Dynamics* reversed

10:28:22 11   summary judgment, and the *Cook* case the court denied summary

10:28:27 12   judgment.  So those also are summary judgment cases.

10:28:33 13             If I may, Your Honor?

10:28:35 14             THE COURT:  Yes, please.

10:29:12 15             You even gave me your notes.

10:29:15 16             MR. BUKOWSKI:  I did.

10:29:28 17             THE COURT:  Okay.

10:29:29 18             MR. BUKOWSKI:  That's all I have unless the

10:29:31 19   Court has further questions, Your Honor.

10:29:32 20             THE COURT:  No, I don't.  Thank you very much.

10:29:42 21             MR. SHEEHAN:  Thank you, Your Honor.  I just

10:29:42 22   have a few points, unless the court has questions.

10:29:46 23             The first is one of the statements that

10:29:50 24   Mr. Bukowski made is that we're claiming that the A245

10:29:55 25   patent is covered by their patent.  That's not our

10:29:57 1    assertion.  Our assertion is that the complaint asserts that

10:30:00 2    the A245 patent is covered by their product so for purposes

10:30:04 3    of this motion the Court should take the complaint, the

10:30:08 4    statements in the complaint as true for purposes of deciding

10:30:11 5    whether that statement, patented technology is false.  I'm

10:30:15 6    not saying that if the case goes forward we would not assert

10:30:18 7    that the A245 is covered by our own patents, but again,

10:30:22 8    that's not an issue for this case.

10:30:25 9              I did not get an opportunity to read either of

10:30:27 10   the cases that were cited by Mr. Bukowski other than just

10:30:32 11   real briefly.  This *Diversified* case, I do note in this case

10:30:37 12   it does say that the -- this second suit was a suit on a

10:30:43 13   different patent and different products.  And so presumably

10:30:47 14   reading this case it's dealing with an issue that was not --

10:30:52 15   that was not an issue that the parties were aware of at the

10:30:56 16   time when they entered into that agreement which would be a

10:30:59 17   basis on which to distinguish the *Augustine* case, except

10:31:04 18   when you got language and there are cases that we cited that

10:31:07 19   point out that if you got broad language that intends to

10:31:10 20   release claims that you're not aware of, any claims between

10:31:14 21   the parties, that controls what we have here.  We have broad

10:31:18 22   language, for example, accrued, unaccrued, known, unknown

10:31:23 23   claims, therefore the release applies to those claims

10:31:25 24   whether they knew about them or didn't know about them.

10:31:27 25              THE COURT:  Okay.

10:31:30  1                MR. BUKOWSKI:  Only very briefly, Your Honor.  I

10:31:34  2   do just want to make it clear for the record that the prior

10:31:38  3   suit did not involve the A245 or the product under the '959

10:31:45  4   patent.  It was a different M2T impeller and a different SPX

10:31:51  5   impeller.  So those were different products.  That's all.

10:31:54  6                THE COURT:  Okay.  It's your motion, I don't

10:31:57  7   know that you need a last word, but I will give it to you if

10:32:00  8   you want it.

10:32:01  9                MR. SHEEHAN:  No, Your Honor, I think the cases

10:32:02 10   address that issue.

10:32:03 11                THE COURT:  Okay.  So thank you for the

10:32:05 12   arguments.  They were helpful to me.

10:32:11 13                Plaintiff's complaint asserts claims for patent

10:32:13 14   infringement; unfair competition under the Lanham Act; false

10:32:15 15   advertising and false designation of origin under the Lanham

10:32:19 16   Act; common law unfair competition; declaratory judgment;

10:32:23 17   and unjust enrichment under state law.

10:32:25 18                Defendants have moved pursuit to Rule 12(b)(6)

10:32:28 19   to dismiss the Complaint in its entirety for failure to

10:32:32 20   state a claim.  The basis of its motion as to all counts is

10:32:36 21   the argument that the claims are barred by a settlement

10:32:36 22   agreement entered between the parties in 2007.

10:32:39 23                I am going to grant the motion in part and deny

10:32:42 24   it in part.

10:32:45 25                When reviewing a motion to dismiss pursuant to

10:32:47  1    Rule 12(b)(6), the Court conducts a two-part analysis.

10:32:51  2    First, the Court separates the factual and legal elements of

10:32:54  3    a claim, accepting "all of the complaint's well-pleaded

10:32:57  4    facts as true, but [disregarding] any legal conclusions."

10:32:57  5    *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.

10:33:01  6    2009)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678).  Second,

10:33:01  7    the Court determines that whether the facts alleged in the

10:33:04  8    complaint are sufficient to show ... a 'plausible claim for

10:33:08  9    relief.'"  Id. (quoting *Iqbal*, 556 U.S. at 679).  "The issue

10:33:23 10    is not whether a plaintiff will ultimately prevail but

10:33:26 11    whether the claimant is entitled to offer evidence in to

10:33:31 12    support the claims."  *In re Burlington Coat Factory Sec.*

10:33:35 13    *Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)[(quoting *Scheuer*

10:33:41 14    *v. Rhoades,* 416 U.S. 232, 236 (1974)].  The court may grant

10:33:43 15    a motion to dismiss only if, after "accepting all

10:33:47 16    well-pleaded allegations in the complaint as true, and

10:33:49 17    viewing them in the light most favorable to plaintiff, [the]

10:33:52 18    plaintiff is not entitled to relief." [*Id.*(citations

10:33:52 19    omitted.)].

10:33:54 20              Here, we have contract interpretation at issue.

10:33:57 21    The release in section 4.1 is broad and includes "any and

10:34:02 22    all claims ... whether accrued or unaccrued, known or

10:34:02 23    unknown, suspected or unsuspected ... which any of the [M2T]

10:34:02 24    Parties has asserted, could have asserted, or could assert

10:34:12 25    as of the effective date of [the] Agreement."  It then

specifies that this includes "all matters raised in the Lawsuit or any other matter involving, e.g., intellectual property, proprietary rights, or other rights."  The release also specified that it included "any claims concerning SPX impeller design relative to the Lawsuit" and "any current or future claims concerning" listed impellers, including the A245 impeller, and any claims relating to listed patents, including U.S. Patent No. 7,114,844."

[M2T] also released SPX from "any claims concerning the SPX Parties' future activities with respect to technology of which the M2T Parties knew or could have known from provided information or publicly available information."

Dismissal is proper only if the defendant's interpretation is the only reasonable construction as a matter of law.  When parties present differing - but reasonable - interpretations of a contract term, the Court may need to look to extrinsic evidence to understand the parties' agreement.  And that cannot proceed on a motion to dismiss.

As to Count 1 asserting infringement of M2T's '959 Patent by SPX's A245 impeller, I am granting the motion.  The '959 Patent issued two years before the settlement agreement was entered and the A245 impeller was known at the time of the agreement - in fact, it was

1  specified in the release.

2          Similarly, as to Count 5, seeking declaratory

3  judgment as to the invalidity of SPX's '844 Patent,

4  Plaintiff has conceded that this count should be dismissed,

5  and I am granting the motion.  The patent issued prior to

6  the settlement agreement.  The declaration at issue and the

7  inventorship of that patent was known prior to the

8  settlement agreement, and the patent clearly falls within

9  the release language under any reasonable interpretation.

10          As to the other counts, I am denying the motion.

11  Both parties have presented me with reasonable

12  interpretations of the settlement agreement as to how it

13  applies to those counts - including with regard to the

14  release language in section 4.1.  I cannot resolve those

15  issues on a motion to dismiss.  And thus, I will deny the

16  motion.

17          To the extent that I have granted the motion, I

18  will do so without prejudice so that if things change as

19  Plaintiff suggested, its suggestion that it would have the

20  right to assert defenses if Defendant asserts certain

21  counterclaims, for example, and Plaintiff comes up with

22  facts sufficient to meet a pleading standard, it may attempt

23  to replead the dismissed counts.

24          Is there anything else that we need to address

25  today?

10:37:03 1                    MR. BUKOWSKI:  No, Your Honor.

10:37:06 2                    MR. SHEEHAN:  Your Honor, we also had a claim

10:37:08 3      for attorney's fees in our motion.

10:37:10 4                    THE COURT:  Yes.  I'm going to deny that.

10:37:12 5                    MR. SHEEHAN:  Thank you, Your Honor.

10:37:16 6                    THE COURT:  Any other issues?

10:37:21 7                    MR. BUKOWSKI:  I guess the only other issue,

10:37:23 8      Your Honor, as the Court may recall, we had submitted a

10:37:27 9      stipulation to postpone taking discovery for several weeks

10:37:32 10     after today.  In light of the Court ruling on the pending

10:37:36 11     motion today, and I don't know if counsel would agree that

10:37:40 12     we could commence discovery on the remaining claims.

10:37:44 13                    THE COURT:  Why don't you guys discuss that.  It

10:37:46 14     doesn't seem like it's ripe for me to deal with.  You guys

10:37:50 15     can discuss it and work something out.

10:37:52 16                    MR. BUKOWSKI:  Very good, Your Honor.

17

18                    I hereby certify the foregoing is a true and
        accurate transcript from my stenographic notes in the proceeding.

19

20                              /s/ Dale C. Hawkins
                                Official Court Reporter
21                                U.S. District Court

22

23

24

25